UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HANNAH KALCHBRENNER,

     Plaintiff,

v.                                  Case No: 8:24-cv-866-MSS-AAS

CITY OF BRADENTON,

     Defendant.

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion to Dismiss Complaint, (Dkt. 11), and Plaintiff's response thereto. (Dkt. 12) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Motion is **GRANTED IN PART and DENIED IN PART** as stated herein.

### I. BACKGROUND

#### a. Procedural Background

On April 8, 2024, Plaintiff, a former officer of Bradenton Police Department ("BPD"), initiated this action under 42 U.S.C. § 1983 against Defendant City of Bradenton ("Defendant City"). (Dkt. 1) In the Complaint, Plaintiff alleges Defendant City violated the First and Fourteenth Amendments of the United States Constitution. (Id.) Specifically, Plaintiff alleges Defendant City violated the Equal Protection Clause under a class-of-one theory by treating her differently than other, similarly situated city employees who lodged human resources complaints. (Id. at ¶ 48–51) Additionally,

Plaintiff alleges she suffered adverse employment action in retaliation for lodging complaints against Lieutenant Deshaies and Detective Curulla, who were investigators for the Internal Affairs Unit of the Bradenton Police Department ("BPD"), and Police Chief Melanie Bevan. (Id. at ¶¶ 56–57, 64) Plaintiff contends this alleged retaliation violated the First Amendment. (Id.) Plaintiff requests an injunction ordering Defendant City to comply with the Constitution and permanently enjoining Defendant City from future violations. (Id.) Plaintiff also requests an award of damages as well as attorney's fees and costs. (Id.)

Defendant City moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 11) First, Defendant City asserts that the class-of-one theory of equal protection does not apply in the public employment context. (Id. at 6) Next, Defendant City argues Plaintiff fails to plead facts to show the challenged action was taken pursuant to a municipal policy. (Id. at 11–13) Defendant City also contends Plaintiff fails to show she engaged in protected speech or suffered an adverse employment action. (Id. at 14, 20) For these reasons, Defendant City requests the Court dismiss the Complaint for failure to state a claim. The Motion is due to be granted in part and denied in part.

### b. Alleged Facts

Plaintiff alleges the following facts in support of her claims. In March 2017, Plaintiff was hired as a police officer for BPD. (Dkt. 1 at ¶ 9) Although she resigned in May 2018, Plaintiff returned to employment at BPD six months later, in November 2018. (Id.) She remained employed as a police officer until July 31, 2022. (Id.) While

employed at BPD, Plaintiff was a member of the Police Benevolent Association (the "PBA"), the union for law enforcement officers. (<u>Id.</u> at ¶ 10) Due to her membership in the PBA, Plaintiff was not an at-will employee. (<u>Id.</u> at ¶ 11)

In February 2022, the PBA conducted a survey about the administration of BPD, its practices, and "overall morale." (<u>Id.</u> at ¶ 15) The PBA published the results of the survey in June 2022. (<u>Id.</u> at ¶ 16) The survey results showed "numerous issues occurring within [Defendant City], primarily involving [Police Chief Melanie Bevan] and command staff." (<u>Id.</u> at ¶ 17) In response to the results of the PBA survey, on June 15, 2022, the mayor of Defendant City, Mayor Brown, stated at a City Commission meeting, "I believe the accusations that have been made have no merit . . . . This appears to me to be just another distraction to the City and to [BPD], to try to deter them and the Chief from providing quality service to our community." (<u>Id.</u> at ¶ 18)

On July 14, 2022, BPD officers, including Plaintiff, responded to a call to assist with an arrest warrant in Bradenton, Florida. (<u>Id.</u> at ¶ 19) That day, Chief Bevan was riding along with a new BPD officer. (<u>Id.</u> at ¶ 20) Chief Bevan and the new officer also responded to the request for assistance. (<u>Id.</u>) Once Chief Bevan arrived at the scene of the arrest, she conducted two warrantless searches, one of a bystander and one of the home where the arrest took place. (<u>Id.</u> at ¶ 21) Plaintiff observed "at least one" of these searches and believed it to be illegal. (<u>Id.</u>)

Five days later, Plaintiff reported Chief Bevan's allegedly warrantless searches to Internal Affairs via email on July 19, 2022. (<u>Id.</u> at ¶ 22) Plaintiff alleges no facts about the contents of her email. Mayor Brown directed Internal Affairs to "handle"

the investigation into Chief Bevan despite Internal Affairs having a conflict of interest, as it is overseen by the Office of the Chief.[1] (Id. at ¶¶ 13–14)

On July 22, 2022, during the morning of Plaintiff's first regularly scheduled shift after having made her report to Internal Affairs, Lieutenant Deshaies confronted her in the BPD parking lot. (Id. at ¶ 24) Lieutenant Deshaies ordered Plaintiff to follow him to his office at BPD headquarters for an interview. (Id. at ¶ 25) Plaintiff complied. (Id.) Once Plaintiff was inside Lieutenant Deshaies's office, where Detective Curulla was also present, Lieutenant Deshaies closed the door and told Plaintiff she was not free to leave. (Id. at ¶ 26) Then, Lieutenant Deshaies and Detective Curulla asked Plaintiff about her report to Internal Affairs concerning Chief Bevan's allegedly warrantless searches. (Id.) Plaintiff calls the interaction an "interrogation." (Id.) "Plaintiff felt intimidated and harassed." (Id.) Lieutenant Deshaies and Detective Curulla did not permit Plaintiff to make a phone call, use the restroom, call an attorney, or call her union representative. (Id.) "Plaintiff was further ordered to unlock her personal cell phone and show personal text messages within the phone, which was searched—without a warrant—by Lieutenant Deshaies and/or Detective Curulla." (Id.)

Immediately following the interview, Plaintiff informed her supervisor that she was unfit for duty because of the interview. (Id. at ¶ 27) Plaintiff's supervisor approved

---

[1] Plaintiff alleges BPD is comprised of three Divisions—Patrol Division, Patrol Support Division, and the Office of the Chief. (Id. at ¶ 13) The Office of the Chief oversees the Office of Professional Standards, which houses Internal Affairs. (Id. at ¶ 14)

her sick leave. (Id.) Later that day, Plaintiff went to Defendant City's Human Relations Department. (Id. at ¶ 28) She was escorted into a room where she wrote a statement to Mayor Brown about her experience with Lieutenant Deshaies and Detective Curulla. (Id.) Plaintiff alleges no facts about the content of her statement.

About a week later, on July 31, 2022, Chief Bevan directed that Plaintiff's access to BPD email and headquarters be revoked. (Id. at ¶ 29) Chief Bevan also directed that Plaintiff's husband's access to BPD email and headquarters be revoked.[2] (Id.) Chief Bevan told BPD's IT Department that Plaintiff should be treated as though she were terminated. (Id.) When Plaintiff arrived at BPD's headquarters that day, she could not access headquarters or her BPD email. (Id. at ¶ 30) Likewise, Plaintiff's husband could not access BPD's headquarters or email. (Id.)

That evening, Plaintiff resigned from BPD. (Id. at ¶ 39) She did so because of Lieutenant Deshaies's and Detective Curulla's interrogation and Chief Bevan's revocation of her access to BPD headquarters and email. (Id.)

Plaintiff alleges that her interrogation and detention, as well as the revocation of her access to BPD email and headquarters, were the direct results of her reports to Internal Affairs and Defendant City's Human Relations Department. (Id. at ¶ 32) She alleges these steps were taken to intimidate Plaintiff into withdrawing her report and/or to retaliate against Plaintiff for speaking out against Chief Bevan, Lieutenant Deshaies, and Detective Curulla. (Id.) Plaintiff asserts that Defendant City has never

---

[2] Plaintiff does not explain in the Complaint whether Plaintiff's husband was employed by BPD. These allegations indicate he was.

treated any other complainant in the same or a similar manner as it treated Plaintiff for lodging a complaint against another officer or a superior. (<u>Id.</u> at ¶ 33) For example, Plaintiff alleges that Officer Shelby Gardner lodged a complaint against another officer, which was ultimately determined to be unsubstantiated. (<u>Id.</u> at ¶ 34) Officer Gardner was not interrogated, intimidated, harassed, or prevented from using the restroom, calling an attorney, or calling a union representative. (<u>Id.</u>) Officer Gardner was not ordered to speak during her interview as a complainant. (<u>Id.</u>) Chief Bevan did not revoke Officer Gardner's access to BPD's headquarters or email. (<u>Id.</u>)

Plaintiff initiated this action under 42 U.S.C. § 1983 on the grounds that Defendant City and its high-ranking officials engage in a practice or custom by which they are aware of, tacitly authorize, are indifferent toward, tolerate, and/or ignore Chief Bevan's retaliatory conduct directed at those who speak out against her. (<u>Id.</u> at ¶ 37) Plaintiff asserts that this alleged practice violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

## II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must meet an exceedingly low threshold of sufficiency. <u>Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46

6

(1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In light of a motion to dismiss, to evaluate the sufficiency of a complaint a court must accept the well pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.    DISCUSSION

Defendant City requests the Court dismiss the Complaint for several reasons. First, Defendant City argues the Court should dismiss Plaintiff's equal protection claim because a public employee cannot maintain an equal protection claim under a class-of-one theory. Next, Defendant City argues Plaintiff fails to plead facts to establish Defendant City's municipal liability under 42 U.S.C. § 1983. Additionally, Defendant City asserts Plaintiff's First Amendment claim should be dismissed because Plaintiff fails to show that she engaged in protected speech or that Defendant City took adverse employment action against her. In response, Plaintiff argues that the Court should permit Plaintiff's class-of-one claim because the alleged facts present unusual

7

circumstances. Next, Plaintiff argues the Complaint identifies official policymakers—Chief Bevan and Mayor Brown—who created and promulgated an official, unwritten policy that caused the alleged constitutional violation. Thus, Plaintiff contends the Complaint sets forth a *prima facie* case of municipal liability. As for her First Amendment retaliation claim, Plaintiff argues that her statements to Internal Affairs and to Mayor Brown were made in her capacity as a citizen and relate to matters of public concern. Accordingly, Plaintiff argues, the First Amendment protects both statements. Finally, Plaintiff contends Chief Bevan's treatment of Plaintiff as "effectively terminated" constitutes an adverse employment action.

### a. Plaintiff's Claim Under the Equal Protection Clause of the Fourteenth Amendment

Defendant asserts that Plaintiff's class-of-one equal protection claim must fail because the class-of-one theory does not apply in the public employment context. "To treat like employees differently is not to violate the equal protection clause; rather, it is an accepted consequence of 'the broad discretion that typically characterizes the employer-employee relationship.'" Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274 (11th Cir. 2008) (quoting Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605 (2008)). Accordingly, "'the class-of-one theory of equal protection has no application in the public employment context.'" Id. (quoting Engquist, 553 U.S. at 607). Otherwise, "any personnel action in which a wronged employee can conjure up a claim of differential treatment [would] suddenly become the basis for a federal constitutional claim." Enquist, 553 U.S. at 607–08.

8

In the Complaint, Plaintiff does not allege she is a member of a protected class. Instead, Plaintiff alleges Defendant City "uniquely targeted" Plaintiff as a member of a class of one because of Defendant City's "animus, vindictiveness, or ill will towards" Plaintiff. (Dkt. 1 at ¶¶ 44, 48) Plaintiff argues the Supreme Court has acknowledged that "the most unusual circumstances" might justify a federal court's review of a government agency's personnel decision. (Dkt. 12 at 11); Engquist, 553 U.S. at 600 (quoting Connick v. Myers, 461 U.S. 138 (1983)) ("'[A]bsent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'"). Plaintiff believes the factual allegations in the Complaint establish that this case involves unusual circumstances, exhibited by an alleged "orchestrated campaign of official harassment directed at Plaintiff out of vindictiveness." (Dkt. 12 at 12)

The Court rejects Plaintiff's interpretation of Engquist's and Connick's "unusual circumstances" *dicta*. The Supreme Court was clear:

> [R]atifying a class-of-one theory of equal protection in the context of public employment would impermissibly constitutionalize the employee grievance. The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.

Engquist, 553 U.S. at 609 (internal quotations and citations omitted). Because Plaintiff is a public employee, she cannot maintain an equal protection claim against Defendant City, her employer, under a class-of-one theory. Accordingly, Plaintiff fails to state a

claim under the Equal Protection Clause. Count I is therefore **DISMISSED**. Because the Court finds that amendment of this claim would be futile, the dismissal is **WITH PREJUDICE**.

### b. Plaintiff's Claim of Retaliation Under the First Amendment.

Defendant City argues the Complaint should be dismissed because Plaintiff fails to allege that her First Amendment rights were violated and fails to allege facts that support Defendant City's municipal liability under Monell v. Department of Social Services of New York, 436 U.S. 658, 690 (1978). To satisfy the elements of a § 1983 claim against a municipality, a plaintiff must show: (1) her constitutional rights have been violated; (2) the violation occurred under color of state law; and (3) a policy, ordinance, or official decision caused the violation. Id. at 692.

### i. Protected Speech Under the First Amendment

As to the first element, Defendant argues Plaintiff fails to state a claim for First Amendment retaliation because she does not allege she spoke as a citizen on matters of public concern. Additionally, Defendant argues Plaintiff fails to state a claim because she does not allege she suffered adverse employment action in violation of the First Amendment. "A state may not demote or discharge a public employee in retaliation for protected speech." Morgan v. Ford, 6 F.3d 750, 753–54 (11th Cir. 1993) (citations omitted). To fall within this protection, the employee's speech must be made as a citizen upon matters of public concern. Connick v. Meyers, 461 U.S. 138, 147 (1983). If the employee speaks in her capacity as an employee, or on matters of private

interest, her speech is not protected. <u>Alves v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 804 F.3d 1149, 1159 (11th Cir. 2015) (quoting <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006)). Thus, to show her speech was protected, a plaintiff must allege she spoke both as a citizen and on a matter of public concern. <u>Id.</u> at 1160.

To determine whether an employee spoke as a citizen or as a government employee, the "central inquiry" is "whether the speech at issue 'owes its existence' to the employee's professional responsibilities." <u>Moss v. City of Pembroke Pines</u>, 782 F.3d 613, 618 (11th Cir. 2015) (quoting <u>Garcetti</u>, 547 U.S. at 421). "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." <u>Lane v. Franks</u>, 573 U.S. 228, 240 (2014). Unprotected, employee speech is speech made "in accordance with or in furtherance of the ordinary responsibilities of . . . employment[.]" <u>Alves</u>, 804 F.3d at 1162; <u>id.</u> at 1166 (comparing speech about conduct that interferes with an employee's job responsibilities, which is employee speech, to speech that "directly affects the public's perception of the quality of education in a given academic system," which is citizen speech).

Speech relates to a matter of public concern if it relates to a matter of political, social, or other concern to the community. <u>Morgan</u>, 6 F.3d at 754 (quoting <u>Deremo v. Watkins</u>, 939 F.2d 908, 910 (11th Cir. 1991) (citations omitted)). To determine whether speech relates to a matter of public concern, a court must "discern the purpose of the employee's speech—that is, whether she spoke on behalf of the public as a citizen, or whether the employee spoke for herself as an employee." <u>Id.</u> (citations

omitted). A court must consider "'the content, form and context of a given statement, as revealed by the whole record.'" Id. (citations omitted). "A court may consider the employee's attempts to make the concerns public, along with 'the employee's motivation in speaking.'" Id.

Plaintiff alleges that she spoke as a citizen and not as an employee when she reported Chief Bevan's allegedly warrantless searches to Internal Affairs and when she wrote her statement to Mayor Brown from Defendant City's Human Relations Department about Lieutenant Deshaies and Detective Curulla. (Dkt. 1 at ¶ 36) She further alleges that each instance of speech related to matters of public concern. (Id. at ¶¶ 31, 36)

### 1. Plaintiff Alleges Sufficient Facts to Show Her Email to Internal Affairs Was Protected Speech.

Viewing the factual allegations in the light most favorable to Plaintiff, the Court finds the Complaint plausibly alleges that Plaintiff's email to Internal Affairs was protected speech. Although Plaintiff's email concerned "information acquired by virtue of [her] public employment," this fact "does not transform that speech into employee—rather than citizen—speech." Lane, 573 U.S. at 240. Plaintiff's speech concerned the subject matter of her job because it concerned Plaintiff's on-the-job observation of alleged illegal and unconstitutional misconduct by a supervisory officer. However, construing the allegations in the light most favorable to Plaintiff, it is not clear that Plaintiff's report of her observation was made "in accordance with or in furtherance of the ordinary responsibilities of her employment." Alves, 804 F.3d at

12

1162. The allegations do not indicate Plaintiff's email complained of Chief Bevan's conduct because it interfered with the performance of Plaintiff's job responsibilities. <u>See</u> <u>id.</u> at 1166. Instead, the Complaint indicates Plaintiff sought to call attention to alleged wrongdoing by BPD leadership, which relates to "the public's perception of the quality" of police services. <u>Id.</u>; <u>see</u> <u>Edom v. Chronister</u>, No. 20-cv-1624, 2021 WL 4244845, at *5 (M.D. Fla. Sept. 17, 2021) (finding the plaintiff, a former sheriff's deputy, alleged facts to show his repeated reports of racism within the sheriff's office were "outside the narrow scope of employee speech that the Supreme Court has determined is not protected"). The Court finds Plaintiff plausibly alleges that she spoke as a citizen when she reported Chief Bevan's alleged misconduct to Internal Affairs.

For the First Amendment to protect Plaintiff's speech from retaliation, the Complaint must also allege that the speech was plausibly of public concern. Plaintiff does not describe the content of her email to Internal Affairs with much specificity. Nonetheless, the allegations plausibly show that her purpose was to notify Internal Affairs of Chief Bevan's alleged failure to adhere to important procedures and constitutional safeguards by allegedly conducting warrantless searches. Plaintiff's speech arose out of apparent concerns about Chief Bevan's perceived disregard for citizens' rights. Although Plaintiff apparently made no attempt to make her concerns about Chief Bevan public, this consideration is not dispositive. <u>Morgan</u>, 6 F.3d at 754 n.5. Defendant City's police chief's failure to comply with constitutional procedure plausibly "relate[s] to a matter of political, social, or other concern to the community." <u>Id.</u> at 754 (citations omitted).

Viewing the allegations in the light most favorable to Plaintiff, the Complaint alleges Plaintiff "intended to address matters of public concern from the perspective of a citizen." Boyce v. Andrew, 510 F.3d 1333, 1344–45 (11th Cir. 2007). Plaintiff alleges sufficient facts to establish her email to Internal Affairs was protected speech under the First Amendment.

### 2. Plaintiff Alleges Insufficient Facts to Show Her Report to Mayor Brown About Lieutenant Deshaies and Detective Curulla Was Protected Speech.

As for Plaintiff's report to Mayor Brown about her experience with Lieutenant Deshaies and Detective Curulla, the Court finds the allegations insufficient to establish Plaintiff spoke as a citizen on a matter of public concern. Plaintiff alleges she wrote to Mayor Brown from Defendant City's Human Relations Department "regarding her experience with Lt. Deshaies and Det. Curulla." (Dkt 1 at ¶ 28) Plaintiff's employment gave rise to her complaint. The Complaint alleges Lieutenant Deshaies and Detective Curulla interrogated, intimidated, and harassed Plaintiff because she reported Chief Bevan's allegedly warrantless searches. (Id. at ¶¶ 26, 32) Shaken by the interview, Plaintiff went to Defendant City's Human Relations Department to report her perceived unfair treatment by other BPD officers. (Id. at ¶ 28) Lieutenant Deshaies and Detective Curulla's conduct interfered with her job responsibilities; she took sick leave immediately following the interview. (Id. at ¶ 28) According to the factual allegations, Plaintiff's statement to Mayor Brown did not concern "the public's perception of the quality of" police work administered by BPD. Alves, 804 F.3d at

14

1166. For these reasons, the Court finds the allegations establish Plaintiff spoke as an employee, rather than a citizen, when she wrote her statement to Mayor Brown.

Moreover, even if Plaintiff had spoken as a citizen, the Court finds Plaintiff fails to allege facts that establish her report to Mayor Brown relates to a matter of public concern. Plaintiff alleges no specific facts about the content of her statement to the mayor about Lieutenant Deshaies and Detective Curulla. She simply alleges she wrote a statement directed to the mayor "regarding her experience with Lt. Deshaies and Det. Curulla." (Dkt 1 at ¶ 28) The "form" of Plaintiff's speech was a statement directed to Mayor Brown that Plaintiff wrote in a room at Defendant City's Human Relations Department. (Id.) The Complaint establishes the context of Plaintiff's statement: after taking sick leave as a result of perceived mistreatment by fellow officers, Plaintiff reported her experience to her employer's human relations department. (Id.) The bare factual allegations indicate that Plaintiff's purpose in making her report was to report perceived unfair or inappropriate treatment of herself by other BPD officers. In Morgan, the plaintiff's reports of sexual harassment to Internal Affairs "largely focused upon how" her coworker "behaved toward her and how that conduct affected her work." 6 F.3d at 755. The Eleventh Circuit held that the plaintiff's speech did not relate to a matter of public concern because her "speech was driven by her . . . self-interest in improving the conditions of her employment." Id.; see Alves, 804 F.3d at 1166.

Viewing the factual allegations in the light most favorable to Plaintiff, they are insufficient to establish that Plaintiff's report of perceived misconduct by the Internal Affairs investigators was driven by a concern for the public. Rather, the allegations

show Plaintiff sought to lodge a complaint against her coworkers with their employer's human relations department. Such speech is not constitutionally protected.

The allegations concerning Plaintiff's statement to the mayor about Lieutenant Deshaies and Detective Curulla are insufficient to establish Plaintiff spoke as a citizen on a matter of public concern. Thus, to the extent Plaintiff's First Amendment claim is based on her statement to Mayor Brown, as alleged, it is due to be **DISMISSED**. The Court grants Plaintiff leave to amend the Complaint to include more detailed allegations about the content of Plaintiff's statement if, consistent with the Court's discussion in this Order, a good-faith basis exists for claiming the First Amendment protects the speech.

### ii. Adverse Employment Action

Defendant also argues that the Internal Affairs interview and the revocation of Plaintiff's email and facility access are not adverse employment actions as a matter of law. In response, Plaintiff argues that the alleged intimidation and termination, whether actual or constructive, constitute adverse employment action because they were likely to chill her speech. "An adverse employment action is 'a serious and material change in the terms, conditions, or privileges of employment.'" Kidd v. Mando Am. Corp., 731 F.3d 1196, 1203 (11th Cir. 2013) (citations omitted). "'[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances.'" Holland v. Gee, 677 F.3d 1047, 1058 (11th Cir. 2012) (citations omitted). Constructive discharge is an adverse employment action. See Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1377 (11th Cir. 2021); Meeks v. Computer Assocs.

16

Int'l., 15 F.3d 1013, 1021–22 (11th Cir. 1994) (affirming the district court's finding that a pattern of harassment constituted constructive discharge).

Plaintiff plausibly alleges BPD constructively discharged her from her employment. First, Plaintiff alleges Lieutenant Deshaies and Detective Curulla interrogated, intimidated, and harassed Plaintiff because she reported Chief Bevan's allegedly warrantless searches. (Dkt. 1 at ¶¶ 26, 32) Then, Plaintiff alleges Chief Bevan directed her access to BPD email and headquarters be revoked. (Id. at ¶ 29) Plaintiff further alleges Chief Bevan told BPD's IT Department that Plaintiff should be treated as though she were terminated. (Id.) When Plaintiff arrived at BPD's headquarters for work, she could not access headquarters or her BPD email. (Id. at ¶ 30) Plaintiff alleges she resigned from her position that evening. (Id. at ¶ 39) A reasonable person under these alleged circumstances would perceive the revocation of her access to her workplace facility and email as materially adverse. Furthermore, the allegation that Lieutenant Deshaies and Detective Curulla intimidated Plaintiff approximately one week prior supports the plausibility that Plaintiff would perceive the revocation of access as a retaliatory constructive discharge and that it was in fact intended as such. Thus, the Court finds Plaintiff plausibly alleges she suffered an adverse employment action.

### iii. Municipal Liability Under § 1983

Defendant City asserts that Plaintiff fails to plead sufficient facts to establish Defendant City's municipal liability under Monell. 436 U.S. 658 (1978). "Municipalities . . . cannot be held liable on a theory of *respondeat superior*, or acts

17

committed by its officers." <u>Edom</u>, 2021 WL 4244845, at *8 (citing <u>Monell</u>, 436 U.S. at 691, 693–94). To hold a municipality liable under § 1983, a plaintiff must allege an unconstitutional action "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." <u>Monell</u>, 436 U.S. at 690. Defendants argue Plaintiff fails to plead sufficient facts to show Defendant City has an official policy that caused the alleged violation of Plaintiff's constitutional rights. Thus, Defendants argue Plaintiff fails to show that Defendant City may be held liable under § 1983. In response, Plaintiff argues the Complaint identifies official policymakers—Chief Bevan and Mayor Brown—who created and promulgated an official, unwritten policy that caused the alleged constitutional violation.

Plaintiff may establish Defendant City's municipal liability in one of several ways. First, "[a] municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)." <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016). Second, "[m]unicipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." <u>Id.</u> Third, a municipality can be held liable if a final policymaker ratifies or adopts the unconstitutional act or decision, as well as the unconstitutional motive, of a subordinate public official. <u>Id.</u>; <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474, 1480 (11th Cir. 1991) ("[A] municipal official who has 'final policymaking authority' in a certain area of the city's business may by

18

his or her action subject the government to § 1983 liability when the challenged action falls within that authority.").

Plaintiff does not allege facts to support the first two theories of municipal liability. However, the factual allegations sufficiently support the third theory of Defendant City's liability. In <u>Hoefling</u>, the Eleventh Circuit noted that "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" 811 F.3d at 1280 (quoting <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 510 (2002)) (citing <u>Twombly</u>, 550 U.S. at 570); <u>Brown</u>, 923 F.2d at 1480 ("Our task . . . is not to determine who, in fact, wields final policymaking authority but only to consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss."). A plaintiff is not required to name the final policymaker in the complaint to survive a Rule 12(b)(6) motion. <u>Hoefling</u>, 811 F.3d at 1280 (citations omitted) ("Although Mr. Hoefling may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial, we do not think that he had to name that person in his complaint in order to survive a Rule 12(b)(6) motion.").

Plaintiff alleges Chief Bevan directly constructively terminated her employment with BPD in retaliation for her report of Chief Bevan's allegedly warrantless searches. Plaintiff further alleges Defendant City, "through the highest ranking available supervisory authority," approved or ratified this alleged unconstitutional decision. (Dkt. 1 at ¶ 61) If Chief Bevan were found to have violated Plaintiff's rights by firing her, Defendant City could be held liable if Chief Bevan was assigned the final authority

19

to make personnel decisions for the police department. <u>Brown</u>, 923 F.2d at 1480. If Chief Bevan does not, in fact, have the final decision-making authority to hire and fire within the BPD, to survive summary judgment or prevail at trial, Plaintiff would have to identify and prove a final policymaker ratified Chief Bevan's alleged decision. <u>Hoefling</u>, 811 F.3d at 1280. But to survive a Rule 12(b)(6) motion to dismiss, Plaintiff must simply allege a policymaker ratified the allegedly unconstitutional decision. <u>Id.</u> The Complaint sufficiently pleads municipal liability by alleging that Chief Bevan engaged in a practice of retaliatory conduct and that Defendant City, through some final policymaker, ratified this conduct.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion to Dismiss Complaint, (Dkt. 11), is **GRANTED IN PART and DENIED IN PART**.

2. Count I of the Complaint is **DISMISSED WITH PREJUDICE**.

3. To the extent Plaintiff's First Amendment claim is based on Plaintiff's statement to Mayor Brown, it is **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff is **DIRECTED** to file an amended complaint within twenty-one (21) days of the date of this Order. If Plaintiff has a good faith basis, consistent with the Court's discussion in this Order, for claiming the First Amendment protects Plaintiff's statement to Mayor Brown,

Plaintiff may amend the Complaint to include more detailed allegations about the content of Plaintiff's statement to Mayor Brown. Alternatively, Plaintiff may file an amended complaint that alleges a First Amendment retaliation claim based only on Plaintiff's statement to Internal Affairs.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of February 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person